## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

RAMONA COLON,                             :
            Plaintiff,              :
                               :

            v.                      :      Civil No. 5:21-cv-03337-JMG

                               :

OFFICER AARON EUGENE KINNEL, *et al.*,   :
            Defendants.             :

_____

### MEMORANDUM OPINION

**GALLAGHER, J.**                              **February 6, 2023**

## I.  OVERVIEW

Plaintiff Ramona Colon has alleged federal and state law claims against Defendants Police Officer Aaron Kinnel ("Officer Kinnel"), Sergeant Ryan Sergeant Celia ("Sergeant Celia"), Chief Carl Scalzo ("Chief Scalzo"), Mayor Salvatore J. Panto, Jr. ("Mayor Panto"), City Administrator Luis Campos ("Administrator Campos") and the City of Easton ("Easton") that stem from an incident that took place on July 27, 2019 in Easton, Pennsylvania. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the motion is denied in part and granted in part.

## II.  RELEVANT BACKGROUND AND ALLEGATIONS

On July 27, 2019, Easton police officers received a radio dispatch regarding a noise complaint near the vicinity of 9th and Ferry Streets in Easton, PA. Defs.'s. Statement of Facts ¶ 10, ECF No. 59 [hereinafter "DSOF"]; Pl.'s Resp. to Def. Statement of Facts ¶ 10, ECF No. 73 [hereinafter "PRSOF"]. Police Officer Jonathan Vidal ("Officer Vidal") was the first to arrive on the scene. DSOF ¶ 11; PRSOF ¶ 11. When Officer Vidal arrived on the scene he observed grills and tables that were positioned in the street and what appeared to be a block party taking

place. DSOF ¶ 12; PRSOF ¶ 12.  He also observed loud music emanating from a vehicle that was parked in front of 934 Ferry Street.  DSOF ¶ 13; PRSOF ¶ 13.  A short time later Officer Kinnel arrived on scene.  DSOF, Ex. B, Main Narrative – Off. Jonathan Vidal at Easton 000014. Sergeant Celia also arrived on scene and spoke with Officer Kinnel as people were shouting. DSOF, Ex. C at 1:28-2:20.[1]

At this time Orielas Figueroa-Colon ("Figueroa-Colon") and other party attendees shouted profanities in the direction of Officer Kinnel and other officers on scene.  DSOF, Ex. C at 00:06-2:20.  Officer Kinnel informed Figueroa-Colon that he would issue him a ticket if he did not stop.  Pl. Counter-Statement of Facts, ECF No. 72, ("PCSOF") ¶ 19; Defs.'s Resp. to Pl.'s Counter-Statement of Facts, ECF No. 77 ("DRPCSOF") ¶ 19.  Sergeant Celia testified that he heard Figueroa-Colon ask his neighbors "did anybody call the police?"  PCSOF ¶ 22; DRPCSOF ¶ 22.  Sergeant Celia directed Officer Kinnel to "take him" after Figueroa-Colon had asked if anyone called police.  *Id.*  Officer Kinnel then started pursuing Figueroa-Colon, who by then was making his way from the street to 934 Ferry Street.[2]  DSOF, Ex. C at 2:27-38.  As Officer Kinnel pursued Figueroa-Colon, several people stood in the way of Officer Kinnel in what appeared to be an attempt to stop him from reaching Figueroa-Colon.  *Id.*  In the video two hands can be seen attempting to grab Officer Kinnel's gun from its holster as he walks up the steps towards the building.  *Id.* at 2:32-35.  Several other people were shouting at Officer Kinnel as he pursued Figueroa-Colon.  *Id.* at 2:27-38.

---

[1] Defendants' Exhibit C is a video that was taken by a witness to the incident.  The duration of the video is 18:15.
[2] Defendants contend that Kinnel pursued Figueroa-Colon while attempting to place him under arrest.  DSOF ¶ 23.

Officer Kinnel then reached the entrance to 934 Ferry Street, which was open.  *Id.* at 2:38.  Plaintiff Ramona Colon, the mother of Figueroa-Colon, was standing in the entryway between Figueroa-Colon and Officer Kinnel.  *Id.*  Officer Kinnel then grabbed Plaintiff and pushed her out of the doorway as he moved towards Figueroa-Colon, who was just inside the building.  *Id.*  Plaintiff then fell to the ground of the porch in front of the entryway.  *Id.*  Officer Kinnel reached for his Taser as he approached Figueroa-Colon, who had both of his arms up around his chest.  DSOF, Ex. C at 2:40-47;  *see* DSOF ¶ 29; PRSOF ¶ 29.  At this time, another individual, later identified as Wilfredo Santiago ("Santiago"), had jumped onto the porch and attempted to stop Officer Kinnel from placing Figueroa-Colon under arrest.  DSOF, Ex. C at 2:40-47.  Figueroa-Colon began to push Officer Kinnel out of the building, causing him to fall on to the porch and on top of the Plaintiff.  *Id.* at 2:42-2:48.  A struggle ensued, and at some point the taser fell from Officer Kinnel's hand and on to the ground.  *Id.*  Officer Kinnel can be seen in the video with other individuals on the ground while he attempted to regain possession of his taser.  *Id.*  Officer Kinnel's taser was discharged, striking Plaintiff once in the chest.  *Id.*; *see* DSOF, Ex. G, Test. of Officer Kinnel, *Commonwealth v. Wilfredo Santiago* (CP-48-CR-0001959-2020) ("Officer Kinnel Trial Testimony) at 045:10-15.  Officer Kinnel testified that he only recalled pulling the trigger of the taser one time.  *Id.* at 045:7-9.  After Plaintiff was struck with the taser, Officer Kinnel stood on the porch in front of 934 Ferry Street.  DSOF, Ex. C at 2:56-3:00.  He was then punched in the face by Santiago, causing him to fall down the steps on to the sidewalk.  *Id.*

Figueroa-Colon was later arrested and charged with Assault of a Law Enforcement Officer, Aggravated Assault, Simple Assault, Resisting Arrest and Disorderly Conduct.  DSOF, Ex. B, Main Narrative – Off. Jonathan Vidal at Easton 000014-16.  The charges alleged that

Figueroa-Colon punched Officer Kinnel in the face which caused him to fall to the ground and strike his head.[3]  In their reports following the incident, Officer Kinnel, Sergeant Celia, and Detective Christopher Miller ("Detective Miller") stated that Figueroa-Colon was the individual who punched Officer Kinnel in the face.  PCSOF ¶38; ¶ DRPCSOF ¶38; DSOF, Ex. B, Main Narrative – Off. Aaron Kinnel at Easton 000025-26.  Officer Kinnel also submitted a "Use of Force Report Form" that provided details of the force used during the incident.  PCSOF, Ex. 8, Use of Force Report Form.  On this form Officer Kinnel indicated he used verbal commands, holding and restraining, and discharged a taser during the incident.  *Id.* at Easton000052.  Additionally, Officer Kinnel stated on this form that Plaintiff was struck by the taser and the taser probes penetrated her skin.  *Id.* at Easton 000053.  The form also indicated the taser struck Plaintiff in the chest.  *Id.* at Easton 000055.  Besides the notation on the form regarding the type of force applied, the form did not contain any other information regarding the push of Plaintiff.  *Id.* at 000052-56.  Additionally, the device report that records discharge data for Officer Kinnel's taser showed that the taser was discharged three times on July 27, 2019.  *Id.* at 000057-58.  Figueroa-Colon and Santiago were subsequently convicted for their crimes committed during this incident.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Facts are material if they "might affect the outcome of the suit under the governing law."  *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting

---

[3] In their response to Plaintiff's Counter-Statement of Facts, Defendants state that the charges were amended once they obtained evidence showing that Santiago was the individual who struck Kinnel and not Figueroa-Colon.  DRPCSOF ¶ 34.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).  "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## IV.  DISCUSSION

Defendants move for summary judgment with respect to Plaintiff's 42 U.S.C. § 1983 claims and state-law tort claims.  The Court addresses these arguments in turn.

### a.  Qualified Immunity

With respect to Plaintiff's claims of excessive force and unlawful search, Defendants have asserted the affirmative defense of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry: (1) whether the facts, taken in the light most favorable to the nonmoving party show the officer's conduct violated a federal right, and (2) whether the right in question was clearly established at the time of the violation.  *See Tolan v. Cotton,* 572 U.S. 650, 655-56 (2014).  Courts are free to address the two elements in whichever order they deem appropriate.  *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (citing *Pearson*, 555 U.S at 235).  Defendants have asserted the defense of qualified immunity with respect to Plaintiff's claims of excessive force and unlawful search.   We will first address the constitutionality of these claims before considering whether the law is clearly established.

### b.  Plaintiff's Excessive Force Claims

In determining whether a police officer's conduct constitutes excessive force, we must consider whether the forced was objectively unreasonable under the Fourth Amendment.  *Graham v. Connor,* 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").  This must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are often tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."  *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (quoting *Graham,* 490 U.S. at 396–97).  Therefore we must determine whether the actions of the police officer were "objectively reasonable in light of the facts and circumstances" facing the police officer at that time.  *Graham,* 490 U.S. at 397.

6

Factors to be considered in this analysis are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  In addition to these factors, courts in the Third Circuit also consider the factors set out in *Sharrar v. Felsing*. 128 F.3d 810, 821-22 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).  These factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *Id.* at 822.  This inquiry is "highly individualized and fact specific," requiring us to examine the totality of the circumstances. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015); *see Curley*, 499 F.3d at 207; *Graham*, 490 U.S. at 396.  The question of reasonableness is normally a question to be decided by a jury. *Rivas*, 365 F.3d at 198.  However, summary judgment may be appropriate, where, as a matter of law, "the evidence would not support a reasonable jury finding that the police officers' actions were objectively unreasonable." *Gorman v. Twp. Of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

The Court is guided in part here by video taken of the incident.  In cases where relevant events are captured on video, courts should analyze the facts as they are depicted in the video over the parties' characterizations of said events.  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).  In cases with video evidence, summary judgment is appropriate when no reasonable factfinder could view the video of the alleged incident and determine that the defendant violated plaintiff's constitutional rights.  *Tindell v. Beard*, 351 Fed. Appx. 591, 596 (3d Cir. 2009).  Plaintiff has alleged two claims of excessive force against Officer Kinnel.  Plaintiff has alleged that Officer Kinnel "grab[bed] the Plaintiff from behind, pulled her from the vestibule of her home and

slammed her on the cement floor of the porch outside and below the threshold." Complaint, ECF 1, ¶ 34.  Plaintiff further alleges that Officer Kinnel used a taser on the Plaintiff.  *Id.* at ¶ 35.  We address these actions in turn.

                    1.  <u>Push of Plaintiff</u>

Regarding a police officer's use of force, the Supreme Court has stated that not every "push or shove" by a police officer constitutes a Fourth Amendment violation, "even if it may later seem unnecessary."  *Graham*, 490 U.S. at 396.  As noted by Defendants in their motion for summary judgment, the Model Jury Instructions for the Third Circuit say just that.  *See Third Circuit Model Jury Instructions: Civil* § 4.9 (2022) ("However, not every push or shove by a police officer, even if it may later seem unnecessary in the peace and quiet of this courtroom, constitutes excessive force.").

In their motion, Defendants argue that Plaintiff's allegations in her complaint, namely that Officer Kinnel "violently did, without warning, grabb[ed] the Plaintiff from behind [and] slammed her to the cement floor," are clearly refuted by the cell phone video of the incident.  Defendants also argue that the push of Plaintiff was not excessive because she stood between Officer Kinnel and Figueroa-Colon to interfere with the arrest.  In the video, Officer Kinnel can be seen walking up the steps leading to 934 Ferry Street in pursuit of Figueroa-Colon.  DSOF, Ex. C at 2:27-38. When he gets to the entryway he encounters Plaintiff, who is now facing Officer Kinnel and standing between him and Figueroa-Colon.  *Id.* at 2:38.  Officer Kinnel can then be seen on the video grabbing Plaintiff and pushing her towards the ground of the porch in front of the house.  *Id.* at 2:38-40.

In her affidavit submitted with her motion response, Plaintiff alleged that Officer Kinnel entered her house, grabbed her body and threw her down on to the concrete porch.  PCSOF, Ex.

4, Affidavit of Plaintiff ("Plaintiff Aff."), at 2-3.  She also stated that Officer Kinnel never asked her to move before entering the house or told her why he was entering the house, and he never said that her son was being placed under arrest.  *Id.* at 3.  The Court acknowledges that the evidence presented thus far by the Plaintiff is extremely limited.  However weak this evidence may be, it is enough to create a material factual dispute as to the reasonableness of the force that was applied.  Defendants contend that Officer Kinnel pushed Plaintiff from the entrance, which caused her to fall on to a chair on the porch.  DSOF ¶27.  Plaintiff alleges that she was grabbed by the arm and torso, "dragged" out of her house and then thrown on to the concrete patio.  PRSOF ¶27.  The video is not conclusive.  Drawing all reasonable inferences in favor of the Plaintiff, which we are required to do at this stage, we find that this factual dispute, which goes to the reasonableness of force used by Officer Kinnel, precludes a finding of summary judgment for Defendants at this time.

In their motion, Defendants point to three cases involving claims of excessive force based on a push or a shove.  In *Marable v. W. Pottsgrove Twp.*, the court found that the force used was reasonable and granted summary judgment to defendants in a case where the plaintiff alleged he was forcefully pushed to the ground while being arrested for disorderly conduct.  No. 03-CV-3738, 2005 WL 1625055, at *11 (E.D. Pa July 8, 2005), *aff'd,* 176 F. App'x 275 (3d Cir. 2006).  Similarly, in *Atkinson v. McCarthy*, summary judgment was granted to defendants where the plaintiff alleged that he was pushed against a car while being arrested for a noise complaint.  No. 18-CV-840, 2019 WL 6842032, at *4 (W.D. Pa. Dec. 16, 2019).  Finally, in *Jones v. City of Jersey City*, the Third Circuit upheld summary judgment for defendants, where plaintiff had alleged excessive force after she was shoved by a police officer.  45 Fed. Appx. 196, 198 (3d Cir. 2002).  In that case the defendants alleged that plaintiff ran at police officers and jumped on a police officer's back to

prevent them from placing her boyfriend under arrest. *Id.* at 196. The Court held that the officer's shove was not clearly unreasonable under the circumstances, noting that the plaintiff had tried to interfere with an arrest and that her injury indicated she was not pushed with great force. *Id.* at 198.

These cases, while persuasive, involve facts that are rather distinct from the facts in this case. In *Marable* and *Atkinson*, the plaintiffs were arrestees who claimed that police officers used excessive force during the course of their arrests. In this case, Plaintiff was never placed under arrest and was not the subject of any arrest. Of the three cases cited by Defendants, the closest fit is *Jones*, where the plaintiff alleged excessive force after she attempted to interfere with the arrest. While the facts and circumstances are similar to the incident here, the actions of the plaintiff in that case and Plaintiff Colon are distinguishable. There, the plaintiff admitted that she attempted to interfere with the arrest of her boyfriend. *Id.* at 197. Additionally, the defendants alleged that she ran at police officers and jumped on a police officer's back in an effort to stop the arrest of her boyfriend. *Id.* Here, Plaintiff Colon stood in the entryway of 934 Ferry Street between Officer Kinnel and Figueroa-Colon as Officer Kinnel attempted to place Figueroa-Colon under arrest. Citing the video of the incident, Defendants contend that she was trying to stop Officer Kinnel from arresting Figueroa-Colon by intentionally placing herself in between the two men. As is often the case, the video here tells us a great deal while telling us so little at the same time. There is what we can see but not the befores, the afters or that in the periphery. Plaintiff can certainly be seen standing in the entryway between Officer Kinnel and Figueroa-Colon, but the video does not show us enough to definitively say at this stage whether she was attempting to interfere with the arrest, and she denies it. Taking Plaintiff's affidavit into account, in which she claims she was just

trying to give her son a hug, we are left with a material factual dispute.  Summary judgment is therefore inappropriate at this time.

2.  Tasing of Plaintiff

Count III of the Complaint appears to allege that the tasing of Plaintiff was an unlawful seizure and also an excessive use of force.  Because Plaintiff has alleged that her Fourth Amendment right to be free from "unreasonable" seizures was violated by the use of excessive force, we must first determine whether a seizure occurred and then analyze whether the level of force, in this instance the use of the taser against Plaintiff, was reasonable.  Defendants argue that no seizure took place because there was no intent on part of Officer Kinnel to effect a seizure of Plaintiff.  *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).  In her response, Plaintiff contends that the tasing constituted a seizure based on her allegations that Officer Kinnel pulled the taser, aimed it at Figueroa-Colon, pulled the trigger, and then aimed it at Plaintiff before pulling the trigger a second time.  Defendant also argues that Plaintiff's claim does not give rise to a Fourth Amendment seizure as the discharge of the Taser was accidental.

A Fourth Amendment seizure takes place when "there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 597;  *Torres v. Madrid*, 141 S.Ct. 989, 998 (2021) ("A seizure requires the use of force with intent to restrain.").  Accidental force, however, does not qualify as a seizure under the Fourth Amendment.  *Torres*, 141 S.Ct.at 998 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).  The question of intent to restrain is an objective one.  *Id.* ("the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context."); *see Nieves* v. *Bartlett*, 139 S.Ct. 1715, 1724-25 (2019).

11

Defendants' argument rests on two premises – first, that Officer Kinnel did not have the requisite intent to effect a seizure on Plaintiff, and second, that Plaintiff was struck by an accidental discharge of Officer Kinnel's taser.  Defendants again reference the video of the incident, which shows Officer Kinnel attempting to use his taser while struggling with Figueroa-Colon.  DSOF, Ex. C at 2:38-50.  It was during this struggle, they contend, that the taser was discharged and struck Plaintiff.  For her part, Plaintiff claims that Officer Kinnel aimed the taser at her and intentionally discharged it, striking Plaintiff in the chest.  Plaintiff Aff. at 3.  The video of the incident, while instructive, does not capture the precise moment when Plaintiff is struck by the taser.  We are left with Defendants claiming that the discharge was unintentional, while Plaintiff claims the discharge was intentional.  We therefore have a material factual dispute here as to the initial inquiry of whether the tasing of Plaintiff constituted a seizure.  This dispute precludes summary judgment as to this claim, and we therefore need not address the reasonabless prong of the inquiry.  Defendants' motion for summary judgment as to Plaintiff's claims of excessive force in both Counts I and III of the Complaint are denied.

### c.  Unlawful Entry

In their motion for summary judgment, Defendants argue that Plaintiff's unlawful entry claim fails for two reasons.  First, Plaintiff did not have a reasonable expectation of privacy in the entryway of 934 Ferry Street, and second, exigent circumstances entitled Officer Kinnel to enter the building without a warrant.  We address these arguments in turn.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  A claimant alleging a Fourth Amendment violation must have a legitimate expectation of privacy in the place to be searched.  *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990); *see Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Therefore, to support her claim of unlawful entry, Plaintiff must establish that she had a reasonable expectation of privacy in the entryway of 934 Ferry Street.

Defendants argue that Third Circuit precedent holds an individual does not have an objectively reasonable expectation of privacy in the common area of a multi-unit apartment building, and as such, Plaintiff's unlawful entry claim is precluded.  *See United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011).  In *Correa*, a fugitive was apprehended in the common-use stairwell of a multi-unit apartment building that had a locked exterior door.  *Id.* at 188.  The defendant argued that his Fourth Amendment rights were violated when government agents entered common areas of the building and seized him.  *Id.* at 190.  The Court held that the defendant did not have a reasonable expectation of privacy in the common area of the multi-unit apartment building because he did not have any control over those areas.  *Id.* at 191.  The Court reasoned that any resident could allow individuals to enter the common areas of the building, and, that the "purpose of the front door was to 'provide security to the occupants, not privacy in common hallways.'"  *Id.* at 191 (quoting *United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993).

In their motion for summary judgment, Defendants argue that the entryway of 934 Ferry Street was a common area of a multi-unit dwelling, and as such Plaintiff does not have standing under the Fourth Amendment to raise this claim.  Citing the video, Defendants claim that anyone could freely enter the building since the door was unlocked and opened at the time of the incident.  To further support this argument, Defendants submitted a Certificate of Use and

Occupancy from the City of Easton with their reply brief, which states that the building at 934 Ferry Street is a multifamily building containing three units.  Defs.'s Reply Brief, Ex. C at Easton 000105.  Finally, Defendants point to the Complaint filed in this case, where Plaintiff states that her address is 934 Ferry Street, Apartment 1.  In her affidavit submitted with her motion response, Plaintiff states that the home is not a "multi-unit apartment complex," but instead is "a rowhome where family members reside on two different floors."  Plaintiff Aff. at 2, n.1.  While there appears to be evidence contesting this claim, we must draw all reasonable inferences in favor of the Plaintiff at this stage.  The material factual dispute here as to whether the building is a multi-unit apartment complex or a family rowhome must be resolved by the ultimate factfinder and precludes summary judgment at this time.

We next turn to Defendants' argument that exigent circumstances, in this case hot pursuit, justified Officer Kinnel's warrantless entry into Plaintiff's home.  A warrantless search of a home is "presumptively unreasonable under the Fourth Amendment."  *United States v. Parrott*, 450 Fed. Appx. 228, 230 (3d Cir. 2011); *see Payton v. New York*, 445 U.S. 573, 586 (1979); *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) ("Police must have probable cause to search, or the search is per se illegal.").   There are certain circumstances, however, that excuse the warrant requirement.  *Parkhurst*, 77 F.3d at 711.  These exceptions include "an inventory search incident to a lawful arrest, objects in plain view of the officers, and exigent circumstances." *Id*.

The exigent circumstances exception applies when "'the exigencies of the situation' makes the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)).  Exigent circumstances include instances where police officers are in hot

pursuit of a fleeing suspect.  *United States v. Santana*, 427 U.S. 38, 42-43 (1976); *United States v. Mallory*, 765 F.3d 373, 384 (3d Cir. 2014); *see United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006).

When determining whether exigent circumstances justified a warrantless intrusion, we consider the facts and circumstances of the intrusion through an objective standard and not on the subjective intent of the police officer.  *Mallory*, 765 F.3d at 383 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)).  Additionally, the Supreme Court has instructed that this exception is "case-specific,"  *Riley v. California*, 573 U.S. 373, 388 (2014), and must be evaluated under the "'totality of the circumstances' confronting the officer as he decides to make a warrantless entry." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013)).  In a case involving hot pursuit, "some element of a chase will usually be involved…," *Santana*, 427 U.S. at 43 n.3, but it need not be a long, extended chase through the streets.  *Id.* at 42-43 ("an extended hue and cry in and about (the) public streets[ ]" not required).  In a case where police officers enter a home without a warrant, the burden is on the government to demonstrate exigent circumstances entitled them to the warrantless entry.  *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) ("Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.").

Defendants contend that Officer Kinnel was in hot pursuit of Figueroa-Colon and was thus justified in pursuing him into the entryway of the building at 934 Ferry Street.  In her response, Plaintiff argues exigent circumstances did not exist in this case based on the factors set

forth by the Pennsylvania Supreme Court in *Commonwealth v. Wagner*, 486 Pa. 548 (1979).

Those factors include:

> (1) the gravity of the offense; (2) whether the suspect is reasonably
> believed to be armed; (3) whether there is, above and beyond, a clear
> showing of probable cause; (4) whether there is a strong reason to believe
> that the suspect is within the premises being entered; (5) whether there is a
> likelihood that the suspect will escape if not swiftly apprehended; (6)
> whether the entry was peaceable; and (7) the time of entry.

*Id.* at 557 (citing *Commonwealth v. Williams*, 483 Pa. 293, 298-99 (1978)).  Addressing these

factors, Plaintiff argues the police were not in pursuit of a felon, no evidence was at risk of being

destroyed, there was no danger to police or other persons inside or outside of Plaintiff's home,

the "gravity of the offense" was low, the suspect, Figueroa-Colon, was not reasonably believed

to be armed, and there lacked probable cause.

The *Williams* factors are nearly identical to the factors the D.C. Court of Appeals

considered in *Dorman v. United States* ("the Dorman factors").  435 F.2d 385, 392–93

(D.C.Cir.1970)(en banc).  There are six *Dorman* factors that courts will use to determine whether

exigent circumstances justify a warrantless intrusion:

> (1) the gravity of the offense; (2) a reasonable belief that the suspect is
> armed; (3) a clear showing of probable cause based upon reasonably
> trustworthy information; (4) a strong belief that the suspect is in the
> premises; (5) "a likelihood that the suspect will escape if not swiftly
> apprehended"; and (6) peaceable entry, affording the suspect "an
> opportunity to surrender ... without a struggle and thus to avoid the
> invasion of privacy involved in entry into the home.

*United States v. Anderson*, 644 F. App'x 192, 195 (3d Cir. 2016) (quoting *Dorman*, 435 F.2d at

392–93), cert. denied, —— U.S. ——, 137 S.Ct. 130, 196 L.Ed.2d 102 (2016).  In *Klein v.*

*Madison*, a case involving similar claims against the Allentown Police Department and litigated

by the same attorneys before us now, the court considered these factors to determine whether

exigent circumstances permitted police officers to enter the plaintiff's home without a warrant.

16

374 F. Supp. 3d 389, 412-15 (E.D. Pa. 2019).  In that case, the plaintiff alleged police officers

used excessive force when they violently removed her from the doorway of her home after she

refused to allow them inside without a warrant.  *Id.* at 404-05.  After addressing each *Dorman*

factor individually, the Court found that a reasonable jury could determine that police officers

lacked exigent circumstances permitting their warrantless entry into plaintiff's home.  *Id.* at 416.

       We reach a similar conclusion in this case.  Regarding the first factor, the gravity of the

offense, the evidence presented thus far indicates that Figueroa-Colon was initially going to be

placed under arrest for disorderly conduct.  *See* DRPCSOF ¶ 24; PCSOF, Ex. 5, Test. of

Sergeant Celia, *Commonwealth v. Orialis Figueroa-Colon* (CR-103-2020) ("Celia Trial

Testimony) at 53:13-19.  Defendants argue that exigent circumstances, specifically hot pursuit,

allowed Officer Kinnel to enter 934 Ferry Street to arrest Figueroa-Colon once he entered the

building, and that a suspect should not be permitted to evade an arrest that has been set in motion

in a public place by retreating into a private place.  *See Santana*, 427 U.S. at 43.  However, in

*Lange*, *supra*, the Supreme Court rejected the blanket rule that flight of a suspected

misdemeanant will always justify warrantless entry of a home.  141 S. Ct. at 2024 ("On many

occasions, the officer will have good reason to enter—to prevent imminent harms of violence,

destruction of evidence, or escape from the home.  But when the officer has time to get a

warrant, he must do so—even though the misdemeanant fled.").  Here, Figueroa-Colon was

being placed under arrest for disorderly conduct, which, as Officer Vidal testified can either be a

summary offense or misdemeanor pending on the severity of the act.  *See* PCSOF ¶20;

DRPCSOF ¶20.  Given the rather low severity of this crime and based on the evidence presented

at this stage, this factor weighs against a finding of exigent circumstances.

As to the second factor, a reasonable belief that the subject is armed, Defendants have not presented evidence at this point to suggest they had a reasonable belief that the suspect, Figueroa-Colon, was armed when Officer Kinnel pursued him into 934 Ferry Street, nor did they make this argument in their motion. This factor weighs against a finding of exigent circumstances.

With respect to the third factor, Officer Kinnel had probable cause to arrest Figueroa-Colon. Probable cause has been defined as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In determining whether probable cause justified an arrest, courts look to the totality of circumstances at the time of the arrest. *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003). Here, Officer Kinnel stated in his police report that he observed Figueroa-Colon screaming profanities at officers on scene, at which time Officer Kinnel warned him that he would be issued a ticket for disorderly conduct. DSOF, Ex. B, Main Narrative – Off. Aaron Kinnel at Easton 000025-26; see PCSOF ¶19; DCSOF ¶19. His report then states that Figueroa-Colon continued screaming at Officer Kinnel and the other officers, at which time Officer Kinnel decided to place him under arrest. *Id.* Video of the incident shows Figueroa-Colon screaming and being held back by several people prior to his arrest. DSOF, Ex. C at 2:00-20. Plaintiff has argued probable cause did not exist because Figueroa-Colon was only exercising his First Amendment rights, and, a citation could have been mailed to his residence. Based on the evidence presented thus far, and looking at the totality of the circumstances, it appears at this stage that Officer Kinnel had probable cause to arrest Figueroa-Colon. This factor weighs in favor of exigent circumstances.

Regarding the fourth factor, Plaintiff conceded in her motion that Figueroa-Colon was inside the premises at 934 Ferry Street at the time Officer Kinnel entered the building. This weighs in favor of exigent circumstances. As to the fifth factor, that the suspect would likely escape if not apprehended, this factor weighs against Defendants. Defendants contend Officer Kinnel pursued Figueroa-Colon into 934 Ferry Street to place him under arrest. In Officer Vidal's police report, he acknowledged he was familiar with the family, and knew Figueroa-Colon resided in the building. DSOF, Ex. B, Main Narrative – Off. Jonathan Officer Vidal ("Officer Vidal Report") at Easton 000014. Coupled with his testimony that a citation could have also been mailed to his residence, Defendants have not produced sufficient evidence at this stage to show that there was a legitimate fear that Figueroa-Colon would escape if not swiftly apprehended. As to the sixth and final factor, whether the officer attempted peaceful entry or gave the suspect an opportunity to surrender peacefully, Plaintiff stated Officer Kinnel entered the building without telling her that Figueroa-Colon was under arrest or giving him the opportunity to come out of the building. Defendants argue that Officer Kinnel was justified in pursuing Figueroa-Colon into 934 Ferry Street to make the arrest. At a minimum, these competing accounts create a material factual dispute, which weighs against a finding of exigent circumstances under this factor. After weighing these six factors, and drawing all reasonable inferences in favor of Plaintiff, we find a reasonable jury could determine that Officer Kinnel lacked exigent circumstances when he entered 934 Ferry Street.

With respect to Defendants' argument that Officer Kinnel was in hot pursuit of Figueroa-Colon as he pursued him into 934 Ferry Street, we are guided by the Supreme Court's decision in *Lange*. As we discussed above, the Supreme Court held that flight itself does not justify a warrantless entry into a home when the suspect is alleged to have committed a misdemeanor.

19

*Lange*, 141 S.Ct. at 2024.  There the Court stated that officers must take other factors into account, including, preventing violence, destruction of evidence or escape.  *Id.*  Our analysis regarding the *Dorman* factors is applicable here, and we find that a reasonable jury could determine, based on the evidence presented thus far, that the hot pursuit exception did not justify Officer Kinnel's warrantless entry into 934 Ferry Street.   Having addressed Defendants' standing argument, the *Dorman* factors, and Defendants' hot pursuit argument, we find that a reasonable jury could determine that Plaintiff's Fourth Amendment rights were violated when Officer Kinnel entered her home without a warrant.  Therefore summary judgment is denied as to this claim.

### d.  Qualified Immunity (Continued)

In keeping with the two-step framework to determine the issue of qualified immunity, we addressed the first prong – that is, whether Officer Kinnel's actions violated the federal rights of Plaintiff.  *See Tolan*, 572 U.S. at 655-56.  We have found that material issues of fact preclude summary judgment at this time with respect to the excessive force and unlawful entry claims.  To close the qualified immunity loop, we will consider whether a reasonable fact finder could determine the right in question was clearly established at the time of the alleged violation.  *See id.*

A right is clearly established if it is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In undertaking this inquiry, a court must take into account the "specific context of the case, not as a broad general proposition."  *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *see Ashcroft*, 563 U.S. at 741  ("We do not require a case directly on point, but existing precedent must have placed the

statutory or constitutional question beyond debate.").  "Reasonableness under the second factor

is an issue of law for the district court to determine; however, if there are facts material to the

determination of reasonableness in dispute, then that issue of fact should be decided by the jury."

*Barton v. Curtis*, 497 F.3d 331, 335 (3d Cir. 2007) (citing *Sharrar*, 128 F.3d 810, 826-28, 832).

As an affirmative defense, the burden of establishing qualified immunity falls on the official

claiming it.  *See Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

In their motion for summary judgment, Defendants argue that case law and common

sense inform police officers they may use force to push someone who is trying to interfere with

or prevent an arrest.  They also argue that Officer Kinnel must be afforded qualified immunity

because it was not clearly established at the time, or now, that officers cannot use necessary force

when a person is trying to interfere with an officer's investigation.  Plaintiff argues that disputed

issues of material fact precludes our ruling on whether Officer Kinnel is entitled to qualified

immunity at this stage.  As discussed above, there are material factual issues as to the

reasonableness of Officer Kinnel's conduct and whether Plaintiff was seized under the Fourth

Amendment.  These issues preclude a grant of qualified immunity at this time.  However,

Defendants will be permitted to re-raise the defense at trial if the evidence so warrants.

### e.  Failure to Intervene

Plaintiff alleges that officers on scene failed to intervene when her constitutional rights

were violated as to her claims of excessive force and unlawful search.  To determine whether a

police officer failed to intervene in a Fourth Amendment context, we must look to whether "the

police officer, [] supervisory or not, fails or refuses to intervene when a constitutional violation

… takes place."  *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (quoting *Byrd v. Clark*,

783 F.2d 1002, 1007 (11th Cir. 1986)).  A failure to intervene claim will not survive without a

finding of a predicate constitutional violation. *Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 204 (3d Cir. 2011) (citing *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). We must also consider whether the police officer had a "realistic and reasonable opportunity to intervene," irrespective of the officer's rank or supervisory status. *Smith,* 293 F.3d at 652 (quoting *Detective Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). In determining whether an officer had a reasonable opportunity to intervene, the duration of the incident must be considered. *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020). In considering a failure to intervene claim, a court should deny summary judgment if the parties dispute whether an officer had "a reasonable opportunity to intervene." *Smith*, 293 F.3d at 650.

In *El*, two arrestees alleged that a lieutenant failed to intervene by failing to stop police officers from using excessive force. 975 F.3d at 335. Citing Third Circuit precedent, the Court emphasized the duration of the incident, noting the longer an incident takes to unfold, the more likely there is a genuine issue of fact in terms of whether there was a reasonable opportunity to intervene. *Id.*; *see Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (summary judgment denied where alleged incident involving excessive force lasted approximately fifteen minutes); *Smith*, 293 F.3d at 650 (material factual dispute where plaintiff alleged that he was beaten and knocked to the floor, pulled to his feet and then beaten some more); *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) ("brevity" may "defeat[] [a]…failure to intervene claim.").

Perhaps just as relevant in *El* is the Court's analysis video of the incident. 975 F.3d at 336. There, the plaintiffs alleged that the entire incident lasted approximately twenty minutes, and that the duration of the incident was key in establishing the lieutenant's failure to intervene. In reversing the District Court's denial of summary judgment, the Court held that denial of

summary judgment was improper when the video of the incident "blatantly contradict[ed]" the District Court's findings. *Id.* at 336; *see Scott*, 550 U.S. at 380.

In this case Plaintiff alleges that Sergeant Celia and other officers on the scene failed to intervene when Officer Kinnel is alleged to have used excessive force against Plaintiff and entered 934 Ferry Street without a warrant. In their motion, Defendants argue there is no viable failure to intervene claim because no underlying constitutional violation took place, and even if there was a constitutional violation, Sergeant Celia and the Defendant officers did not have a realistic opportunity to intervene. With respect to the constitutional element prong, we have already found that a material disputes of fact exist as to Plaintiff's excessive force and unlawful entry claims. The next step in our inquiry is to determine whether Sergeant Celia and the other officers on scene had a realistic opportunity to intervene.

Defendants argue that Sergeant Celia and Officer Vidal attempted to help Officer Kinnel as the incident took place, but were blocked by the people surrounding Officer Kinnel, and, the short duration of the incident (approximately 35 seconds) prevented Sergeant Celia and the officers from intervening. Plaintiff contends that Sergeant Celia failed to intervene by approving of Officer Kinnel's apprehension of Figueroa-Colon, and by administering aid to Officer Kinnel immediately following the incident instead of attending to Plaintiff. We are guided here by the video of the incident. The video depicts Officer Kinnel approaching Figueroa-Colon, who then goes into 934 Ferry Street. DSOF, Ex. C at 2:27-38. As Officer Kinnel begins his pursuit, several people stand in Officer Kinnel's way or follow him toward the building. *Id.* The video then shows Officer Kinnel attempt to walk up the stairs to the porch in front of the building, at which time a pair of hands can be seen attempting to pull Officer Kinnel by the holster of his gun. *Id.* at 2:32-35. At the 2:37 mark, Officer Kinnel walks up the steps to the entrance and

pushes someone back who appears to be attempting to stop him.  Sergeant Celia can also be seen

pushing at least one person back.  *Id.*  The video then shows Officer Kinnel pushing Plaintiff out

of the entryway as he tries to reach Figueroa-Colon.  *Id.* at 2:38-40.  At this moment Santiago

jumps on the porch and tries to stop Officer Kinnel from arresting Figueroa-Colon.  *Id.*  A

struggle ensues.  *Id.* at 2:40-50.  The video then captures the taser being discharged.  *Id.* at 2:47.

Officer Kinnel stands up and appears to use his portable radio, at which time Sergeant Celia and

Officer Vidal are standing at the bottom of the steps.  *Id.* at 2:50.

Plaintiff claims Sergeant Celia and other officers could have intervened but instead stood

by as Officer Kinnel moved towards Figueroa-Colon.  However, a question remains whether it

was realistic or reasonable for Sergeant Celia and the other officers to intervene, and, whether a

reasonable jury could find, based on the evidence presented thus far, that Sergeant Celia and

other officers failed to intervene.  The video is important evidence here, but as we have noted,

video, while instructive, does not always tell us the whole story.  Such is the case here, and based

on the limited evidence presented thus far, there is a material factual dispute. Therefore at this

stage, while perhaps only softly supported by the record, this claim survives summary judgment.

**f.   Civil Conspiracy**

Plaintiff alleges that Defendants conspired to violate her constitutional rights, and then

conspired to fabricate their accounts of the alleged incident.  A civil conspiracy is " a combination

of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by

unlawful means, the principal element of which is an agreement between the parties to inflict a

wrong against or injury upon another, and an overt act that results in damage." *Adams v. Teamsters

Loc. 115*, 214 F. App'x 167, 172 (3d Cir. 2007) (quoting *Hampton v. Hanrahan*, 600 F.2d 600,

620-21 (7th Cir. 1979); *Rotermund v. United States Steel Corp.*, 474 F.2d 1139, (8th Cir. 1973).

A party alleging a civil conspiracy may use both direct and circumstantial evidence to establish the agreement. *Ball v Paramount Pictures*, 169 F.2d 317, 319-20 (3d Cir. 1948) ("conspiracy may be inferred when the concert of action could not possible be sheer coincidence"). To establish a civil conspiracy, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (quoting *Capogrosso v. Supreme Court of New Jersey,* 588 F.3d 180, 184-85 (3d Cir. 2009)). To prove an agreement was in place, a plaintiff must show that "the state actors named as defendants in the[ ] complaint somehow reached an understanding to deny [the plaintiff] his rights." *Jutrowski*, 904 F.3d at 295 (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)).

A civil conspiracy action requires particularized allegations, such as "those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient.'" *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000) (quoting *Dutton v. Buckingham Twp.*, 97-CV-3354, 1997 WL 732856, at *2 (E.D. Pa. Nov. 13, 1997)). "An allegation of conspiracy can only be overcome at summary judgment when 'the moving parties' submissions foreclose[ ] the possibility of the existence of certain facts from which 'it would be open to a jury ... to infer from the circumstances' that there had been a meeting of the minds." *Jutrowski*, 904 F.3d at 295 (quoting *Anderson*, 477 U.S. at 249).

In her complaint, Plaintiff's claim is divided into two parts. Complaint at ¶ 139. First she asserts a "before" claim, alleging that the Defendant officers conspired to violate Plaintiff's civil rights with respect to the alleged excessive force and unlawful entry. She then asserts an "after" claim, alleging that the aforesaid Defendants conspired after the fact by falsifying police reports

to sanitize the incident. *Id.* In their motion, Defendants argue Plaintiff has not presented sufficient facts to support her claim of civil conspiracy. Regarding the "before" claim, Defendants argue the only evidence Plaintiff has presented thus far is that the officers were all called to the scene. Defendants' motion did not address the "after" claim. Plaintiff appears to concede the "before" claim in her response, and argues only that a material dispute of facts exists with respect to the "after" claim, in that Officer Kinnel, Officer Vidal, Sergeant Celia, and Detective Miller all allegedly falsified police reports.

Considering the evidence before the court at this time, we find that Plaintiff's "after" claim survives summary judgment. The evidence supports a claim the officers conspired to falsify their police reports following the incident. For example, Officer Kinnel, Officer Vidal, Sergeant Celia and Detective Miller all failed to include an account of the push of Plaintiff in their reports. DSOF, Ex. B, Narrative Reports, Easton 000014-26. Moreover, Officer Kinnel's use of force form has minimal information regarding the push of Plaintiff. PCSOF, Ex. 8, Use of Force Form, Easton 000052-56. Similarly, the narrative reports of Detective Miller and Sergeant Celia do not contain information regarding the actual tasing of Plaintiff, only that medical attention was sought for her injuries. DSOF, Ex. B, Narrative Reports, Easton 000017-18, 000024-25. Finally, the narrative reports for Officer Kinnel, Sergeant Celia and Detective Miller all state that Figueroa-Colon was the individual who struck Officer Kinnel and not Santiago, who was later convicted of assaulting Officer Kinnel. *Id.* at Easton 000017-18, 000024-26. Of course, there could be a reasonable explanation for these omissions. However, it is not for the Court to draw such conclusions. Drawing all reasonable inferences in favor of the Plaintiff, a reasonable jury could find Defendants conspired to downplay the incident by omitting details from their police reports and by attempting

to make Figueroa-Colon appear more culpable to justify Officer Kinnel's entry into 934 Ferry Street and the level of force used.

With respect to Plaintiff's "before" claim, summary judgment is granted to Defendants. With regard to her "after" civil conspiracy claim, Plaintiff has produced just enough circumstantial evidence to survive summary judgment with respect to Officer Kinnel and Sergeant Celia.[4] Summary judgment is therefore denied, as "[i]nferring mental state from circumstantial evidence is among the chief tasks of factfinders," *United States v. Wright*, 665 F.3d 560, 569 (3d Cir. 2012); *see Klein*, 374 F.Supp.3d at 422.

### g.   Withdrawn Claims

Plaintiff has withdrawn the following claims: Denial of Equal Rights under Law (Count V); Failure to Prevent Actions Taken under §§ 1986-1986 (Count VII) and Conspiracy to Interfere with Civil Rights (Count VIII).  She has also withdrawn her supervisory claims against Chief Scalzo, Mayor Panto, and Administrator Campos found in Count IX of the Complaint, and her *Monell* claim against the City of Easton found in Count X of her Complaint.[5]

---

[4] In a letter to the Court dated February 2, 2023 (ECF No. 91), Plaintiff indicated that Count VI is withdrawn as to the other defendants named in this count – Chief Scalzo, Mayor Panto, and Administrator Campos.

[5] In her motion, Plaintiff states that Defendants did not move for summary judgment with respect to Sergeant Celia on the supervisory claim (Count IX), and therefore Count IX remains as to him.  She reiterated that claim in her letter to the Court.  *See* ECF No. 91.  However, Plaintiff's supervisory claim is against Scalzo, Panto, Campos and Does.  Plaintiff makes no allegations against Celia in Count IX of the complaint nor is he a named defendant in that count. Additionally, Plaintiff has not identified the John Doe Defendants.  *See Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009) ("If reasonable discovery does not unveil the proper identifies, however, the John Doe defendants must be dismissed.").  Therefore, summary judgment is granted as to Count IX.

**h.  State Law Claims**

Plaintiff has brought several state law claims in this action: assault and battery against Officer Kinnel; trespass against Officer Kinnel; and state civil conspiracy against Officer Kinnel and Sergeant Celia.  Plaintiff has also brought claims under the Pennsylvania Constitution against Officer Kinnel and Sergeant Celia.[6] Defendants argue Plaintiff's claims are barred under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), and, that they are entitled to official immunity under the same.

The PSTCA provides immunity to certain governmental employee conduct.  Similar to the defense of qualified immunity under federal law, the PSTCA

> grants the City governmental immunity from liability for any damages resulting from an injury to a person or property caused by any act of the City, its employee, or any other person, except as specifically provided for under 42 Pa.C.S.A. § 8542. This immunity extends to an employee of the City who is liable for civil damages caused by acts which are within the scope of his office or duties. An employee may be indemnified for the payment of a judgment arising from a lawsuit when the employee was acting, or reasonably believed that he was acting, within the scope of his duties. 42 Pa.C.S.A. § 8548(a). An employee's immunity does not extend to acts that are judicially determined to be crimes, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S.A. § 8550.

*Renk v. City of Pittsburgh*, 537 Pa. 68, 73 (1994).  In addition to the exceptions above, the PSTCA contains eight enumerated exceptions: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic control and street lighting; (5) utility services facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals."  42 Pa. C.S. § 8542(b)(1)–(8).  We now address each of the state law claims.

---

[6] Plaintiff's letter (ECF No. 91) also indicated that she is only pursuing her State Civil Conspiracy claim (Count XIII) and Pennsylvania State Constitutional claim (Count XIV) against Defendants Officer Kinnel and Sergeant Celia.

1.   Assault and Battery

Plaintiff has brought an assault and battery claim against Officer Kinnel.   Under Pennsylvania law, "a police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty." *Renk*, 537 Pa. at 76.   Accordingly, a police officer may use force "as is necessary under the circumstances" when effectuating a lawful arrest. *Id.*   To determine whether a police officer's conduct constitutes assault and battery, we must look to the reasonableness of the forced used. *Id.*   In a state law action alleging assault and battery, a police officer may be held liable if a jury determines that the police officer used unnecessary or excessive force. *Id.*   As discussed above in regard to Plaintiff's Fourth Amendment claims of excessive force, we have found that material factual disputes regarding the reasonableness of force preclude summary judgment at this time.   We also cannot grant summary judgment under the PSTCA at this time, as these material factual disputes are relevant to the issue of whether Officer Kinnel's challenged conduct was  "willful."

2.   Trespass

Under Pennsylvania law, a person is liable for trespass when they "intentionally ente[r] land in the possession of another without privilege to do so…" *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (1952) (quoting Restatement of Torts § 163); *see Klein*, 374 F. Supp.3d at 431. Entry to a property is privileged when a police officer has a warrant, the owner consents to the entry, or exigent circumstances justify a warrantless search. *Klein*, 374 F. Supp.3d at 431.   Here, Defendants contend that they are entitled to summary judgment because Plaintiff did not have an expectation of privacy with respect to the entryway of 934 Ferry Street, and, even if she did have such an expectation, Officer Kinnel's hot pursuit of Figueroa-Colon justified the warrantless intrusion.   Plaintiff argues that Defendants are liable for trespass because there was no warrant to

search the property, no consent was given to enter, and there were no exigent circumstances to justify the warrantless entry.  As we discussed above with respect to Plaintiff's Fourth Amendment unlawful entry claim, summary judgment is inappropriate at this time because there are remaining material factual disputes as to Plaintiff's expectation of privacy in the entryway area of 934 Ferry Street and whether exigent circumstances justified Officer Kinnel's warrantless entry.  These same factual disputes preclude summary judgment on the state law trespass claim.  Additionally, these material factual disputes include whether Officer Kinnel's warrantless entry constituted willful misconduct, so we also cannot grant summary judgment on PSTCA grounds at this time.

### 3.  State Civil Law Conspiracy

To establish a valid claim under Pennsylvania law for civil conspiracy, a Plaintiff must show that "two or more persons combined or agreed with intent to do an unlawful act of to do an otherwise lawful act by unlawful means.  Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Church Mut. Ins. Co. v. All. Adjustment Grp.*, 708 F. App'x 64, 70 (3d Cir. 2017) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211 (1979).  To support her claim a Plaintiff must also establish an overt act "done in pursuance of the common purpose or design." *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. 1992) (quoting *Baker v. Rangos*, 324 A.2d 498, 506 (Pa. Super. 1974).  Similar to our analysis above regarding Plaintiff's federal civil conspiracy claim, there are material factual disputes that preclude summary judgment on her state law conspiracy claim.

### 4.  Claims Under Pennsylvania Constitution

In her complaint, Plaintiff alleged violations of the Pennsylvania Constitution.  Compl. ¶¶ 227-231.  Defendants argue that they are entitled to summary judgment under this claim because "the Pennsylvania Constitution does not provide for a private cause of action for damages."  That

is true, but only to the extent that Plaintiff seeks *damages*. *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." (internal citation omitted)).  "[E]quitable remedies are available" under the Pennsylvania Constitution, and that is all Plaintiff requests. *Id.* at 688; *see also Moeller v. Bradford Cnty.*, 444 F. Supp. 2d 316, 320 (M.D. Pa. 2006) ("[I]t is well settled that individual Plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution.").  Therefore, with respect to Plaintiff's demand for equitable relief, the Court denies summary judgment.

## V.  CONCLUSION

For the reasons set forth in this memorandum, summary judgment is granted in part and denied in part.  The parties will be permitted to raise again the following arguments at trial: qualified immunity regarding excessive force, unlawful search and unlawful seizure claims, PSTCA immunity as to the state-law tort claims, and Plaintiff's request for punitive damages.  An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge