**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

RAMONA COLON,                        :
               Plaintiff,       :
                                     :
             v.                          :          Civil No. 5:21-cv-03337-JMG
                                       :
OFFICER AARON EUGENE KINNEL, *et al.*, :
               Defendants.      :

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                    **February 17, 2023**

### I.     OVERVIEW

Plaintiff has sued Defendants over an incident that took place July 27, 2019, alleging excessive force, unlawful search, unlawful seizure and related claims.  The parties seek to introduce expert testimony to assist the jury in determining whether Defendants' conduct during the alleged incident conformed with law enforcement policies and practices.  Plaintiff also intends to introduce expert testimony regarding Plaintiff's alleged psychological injuries she contends are a result of the incident. Plaintiff offers John G. Peters, Jr., Ph.D., a law enforcement policies and practices expert, and Steven Samuel, Ph.D., a forensic psychologist who conducted a psychological examination of Plaintiff.  *See* Peters Report at 2 ("Peters Report"), ECF No. 60, Ex. A; Samuel Report at 1 ("Samuel Report"), ECF No. 90.[1]  Defendants offer law enforcement policies and practices expert John J. Ryan.  Ryan Report at 1 ("Ryan Report"), ECF No. 61-2, Exh. A.  Defendants have filed *Daubert* motions seeking to preclude the opinions, report and testimony of Dr. Peters and Dr. Samuels. *See* ECF Nos. 60, 82. Plaintiff's *Daubert* motion seeks to preclude the opinions, report and testimony of John J. Ryan.  *See*

---

[1] The report of Dr. Samuel was filed under seal due to the sensitive nature of the material contained in the report.

ECF No. 61.  The Court will address the parties' motions in one omnibus *Daubert* opinion.  For the reasons that follow, the Court grants the parties' *Daubert* motions in part as to Dr. Peters and Mr. Ryan, and denies the Defendants' *Daubert* motion as to Dr. Samuels.

## II.    BACKGROUND

The background facts and procedural history of this case are set forth in detail in the Court's memorandum opinion addressing the Defendants' motion for summary judgment.[2]

## III.   LEGAL STANDARD

Under the Federal Rules of Evidence, district courts must act as the gatekeepers of expert testimony.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); Fed. R. Evid. 702.  Before testimony can reach the jury, the Court must evaluate it for three criteria: qualification, reliability, and fit.  *UGI Sunbury LLC v. Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020).

A witness is *qualified* to provide expert testimony only if the witness has "specialized expertise" in the testimony's subject matter.  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  A witness's testimony is *reliable* only if it is founded upon "good grounds." *UGI Sunbury LLC*, 949 F.3d at 834; Fed. R. Evid. 702 (requiring that expert testimony be "based on sufficient facts or data" and be derived from "reliable principles and methods" that have been "reliably applied . . . to the facts of the case.").  And a witness's testimony *fits* a case only if it would help the trier of fact to understand the evidence or determine a fact in issue.  *UGI Sunbury LLC*, 949 F.3d at 835 (quoting Fed. R. Evid. 702); *see United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) ("fit is [primarily] a relevance concern") (internal quotation marks omitted).

---

[2] On February 6, 2023, the Court issued an order granting in part and denying in part Defendants' Motion for Summary Judgment.  *See* ECF No. 101.  Summary judgment was granted with respect to Plaintiff's Supervisory Liability claim, and Plaintiff withdrew all claims against Chief Carl Scalzo, Mayor Salvatore J. Panto, Jr., City Administrator Luis Campos, and the City of Easton.  In light of the Court's order, any expert testimony regarding these claims will be precluded.

The Federal Rules of Evidence reflect a liberal policy of admissibility for expert testimony and embody a "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact." *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 780 (3d Cir. 1996) (quoting *DeLuca v. Merrell Dow Pharm., Inc.,* 911 F.2d 941, 956 (3d Cir. 1990)); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). "Exclusion of expert testimony is the exception rather than the rule because vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Keller v. Feasterville Family Health Care Ctr.,* 557 F. Supp. 2d 671, 674 (E.D. Pa. 2008) (quoting Fed. R. Evid. 702, advisory committee's notes) (citing *Daubert*, 509 U.S. at 595).

## IV.    ANALYSIS

### a.  Qualification

"As to the first [*Daubert*] requirement - qualification - the Court of Appeals for the Third Circuit has eschewed imposing overly rigorous requirements of expertise and [is] satisfied with more general qualifications." *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.,* 410 F. Supp. 2d 417, 420 (W.D. Pa. 2006) (citation omitted). "Thus, an expert can qualify based on a broad range of knowledge, skills, training, and experience." *Id.*

#### 1.  Dr. John G. Peters

Dr. Peters is a former law enforcement patrol officer, administrator, and deputy sheriff who holds graduate degrees in management.  Peters Report at 4.  Dr. Peters is also a Certified Litigation Specialist: Police and Corrections by the Americans for Effective Law Enforcement ("AELE"), and holds a CLEAR California Teaching Credential for Public Safety and a post-doctoral Master of Arts Degree in Career and Technical Education.  *Id.* at 2.  Since 2020, Dr. Peters has served as the Executive Director of AELE.  *Id.* at 3.  Dr. Peters has conducted training and evaluated training

programs for the Singapore Prison Service, and has been engaged by correctional facilities in several states to review their policies, procedures and training. *Id.* at 3. Additionally, Dr. Peters has taught crowd control, defensive tactics, tactical handcuffing and other arrest techniques to law enforcement officers, and has authored more than 275 publications. *Id.* at 1, 3. Finally, Dr. Peters is a graduate of various TASER Instructor Programs and has authored articles about TASERs and similar devices. *Id.* at 3.

### 2.  John J. Ryan

Mr. Ryan holds a Bachelor of Science Degree in the Administration of Justice from Roger Williams University, a Master of Science Degree in the Administration of Justice from Salve Regina University, and a Juris Doctorate from Suffolk University Law School. Ryan Report at 1. Mr. Ryan served 20 years in the Providence Police Department in Providence Rhode Island as a patrol officer, detective, sergeant, lieutenant, captain and director. *Id.* at 3. Mr. Ryan has taught several courses in police policy and procedure, search and seizure, use of force, police pursuits, and other areas of law enforcement. *Id.* Mr. Ryan also serves as a co-director of the Legal & Liability Risk Management Institute, where he researches and drafts policies for law enforcement agencies and correctional facilities related to use of force, search and seizure, pursuit and other law enforcement operations. *Id.* In this role he also provides on-line training videos for law enforcement. *Id.* Finally, Mr. Ryan has participated in the auditing of law enforcement operations in dozens of police departments nationwide. *Id.* at 3-4.

### 3.  Dr. Steven E. Samuel, Ph.D.

Dr. Steven Samuel is a forensic psychologist who conducted a psychological examination of Plaintiff. His report did not contain significant information regarding his background and qualifications. It should be noted, however, that Defendants' motion does not challenge the background or qualifications of Dr. Samuel, but rather the principles and methods utilized in his

4

examination of Plaintiff.  *See* Fed. R. Evid. 702.

### b.  Reliability

"[T]he inquiry as to whether a particular scientific technique or method is reliable is a flexible one."  *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d. Cir. 1994). "[T]he relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999).

### 1.  Dr. John G. Peters

Defendants argue that Dr. Peters' report and opinion are unreliable because he fails to provide any basis or methodology for his conclusions.[3]  However, to develop his theory of the incident, Dr. Peters relied on police paperwork including, the Incident Report, Criminal Complaint, and several forms regarding the use of force, as well as transcripts from the criminal trial of Orialas Figueroa-Colon ("Figueroa-Colon"), photographs and video from the incident.  Peters Report at 38-39.  While evidence from the criminal proceedings against Figueroa-Colon is inadmissible at trial outside of impeachment purposes, the Third Circuit has found the Federal Rules of Evidence expressly permit experts to rely on otherwise inadmissible facts and data to form their opinion.   *United States v. Gilmore*, 837 Fed. Appx. 101, 104 (3d Cir. 2020) ("An expert may rely on otherwise inadmissible facts and data to form his opinion."); *see Consulnet Computing, Inc. v. Moore*, 631 F. Supp. 2d 614, 623 (E.D. Pa. 2008) ("Fed R. Evid. 703 expressly permits experts to rely on inadmissible evidence.").

Dr. Peters states in his report that his methodology involved assessing the actions of defendants Officer Kinnel and Sergeant Celia against the "recommended and required training and operational practices and procedures in the law enforcement profession."  Peters Report at 5.  In making his conclusions regarding the conduct of the officers on scene, in particular Officer Kinnel

---

[3] The bulk of Defendants' arguments as to the reliability of Dr. Peters pertain to *Monell* claims which have since been withdrawn.

and Sergeant Celia, Dr. Peters cites his education, training and experience.  Accordingly, the Court finds Dr. Peters' opinion to be reliable.  *See United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("[a]s long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process - competing expert testimony and active cross - examination - rather than excluded from jurors' scrutiny.").

### 2. John J. Ryan

To develop his theory of the incident, Mr. Ryan relied on all available material including, *inter alia*, the Incident Report, Criminal Complaint, and several forms regarding the use of force, as well as transcripts from the criminal trial of Figueroa-Colon, photographs and video from the incident. Ryan Report at Schedule D.  As discussed above, while evidence from the criminal proceedings against Figueroa-Colon is inadmissible at trial outside of impeachment purposes, the Federal Rules of Evidence expressly permit Mr. Ryan to rely on otherwise inadmissible facts and data to form his opinion. *See Gilmore*, 837 Fed. Appx. at 104; *Consulnet Computing, Inc.*, 631 F. Supp. 2d at 623.

In rendering his opinions as to whether the actions of Officer Kinnel and Sergeant Celia were consistent with generally accepted law enforcement practices and policies, Mr. Ryan cites his training, experience and knowledge of law enforcement policies and practices, and his research and work with national law enforcement agencies.  *Id*. at 5.  Mr. Ryan also cites and explains two formulas regarding use of force under which law enforcement officers are trained.  The first formula, which parallels the factors set forth by the Supreme Court in *Graham v. Connor*, and the second, the "Use of Force Continuum," were both considered by Mr. Ryan in rendering his opinion.  While Mr. Ryan will not be permitted to draw legal conclusions for the jury, *see infra*, his methodology explained in his report "rests upon good grounds," and as such the Court finds Mr. Ryan's opinions to be reliable. *See Mitchell*, 365 F.3d at 244.

3.  Dr. Steven Samuel

Dr. Samuel conducted an examination of Plaintiff in Allentown on May 25, 2022.  Samuel

Report at 2.  Prior to conducting the examination, Dr. Samuel reviewed the Complaint dated July 27,

2021, the Incident Report from July 27, 2019, and Defendants' Answers to Plaintiff's Complaint. *Id.*

During the exam, Dr. Samuel administered the Selected Sections Structured Clinical Interview for

DSM-5: Clinical Version (SCID-5-CV).  *Id.*  In his report, Dr. Samuel discussed the interview process

which he explained is designed to cover the DSM-5 diagnoses most prevalent in clinical settings.  *Id.*

Dr. Samuel also explained that the tests he selected to administer to Plaintiff were based on the

materials he reviewed prior to preparing her report.  *Id.*

Defendants argue that Dr. Samuel's failure to review Plaintiff's medical and psychotherapy

records renders his opinion unreliable.  But there is no bright line rule requiring psychological experts

review medical records before reaching an opinion as to a party's mental health or as to the cause of a

party's psychological ailments.  *See Paoli R.R.*, 35 F.3d at 762 ("[W]e think that there will be some

cases in which a physician can offer a reliable differential diagnosis without examining the patient,

looking at medical records, taking a medical history, and performing laboratory tests.").  And while a

medical expert who personally evaluates a plaintiff *and* reviews the plaintiff's medical records will

certainly have good grounds for the expert's opinion, courts in the Third Circuit have admitted the

testimony of medical experts who have utilized only one of those two modes of inquiry.  *See Paoli*

*R.R.*, 35 F.3d at 762 ("[A] physician who evaluates a patient in preparation for litigation . . . should

*either* examine the patient *or* review the patient's medical records simply in order to determine that a

patient is ill and what illness the patient has contracted.") (emphasis added); *Jama v. Esmor Corr.*

*Servs., Inc.*, No. 97-3093 DRD, 2007 WL 1847385, at *17 (D.N.J. June 25, 2007) ("For a

[psychologist's] expert report to be admissible under Rule 703, it is sufficient that he/she examine the

patient."); *see also Harris v. Midas*, No. CV 17-95, 2019 WL 5294266, at *10 (W.D. Pa. Oct. 18,

2019) (concluding that forensic psychiatrist who had reviewed the plaintiff's medical records could opine as to the plaintiff's emotional distress and its cause despite never having interviewed the plaintiff). Dr. Samuel personally evaluated Plaintiff, and that evaluation gives him good enough grounds to form a reliable opinion.

Defendants also argue that Dr. Samuel's opinions are unreliable because his findings were based primarily on Plaintiff's self-reporting about her personal and medical history. While Defendants' arguments might persuade a jury to give Dr. Samuel's opinion less weight, they do not persuade the Court that Dr. Samuel's testimony should be precluded. Psychologists' training equips them to evaluate the truthfulness and accuracy of an interviewee's self-reporting, so a psychologist's expert report generally remains reliable even when it relies almost entirely on the impressions the psychologist gleans from examining the plaintiff. *See Jama*, 2007 WL 1847385, at *17. Defendants have not identified an aspect of Plaintiff's self-reporting so glaringly contradicted by any record and so fundamental to Dr. Samuel's analysis that the Court should treat Dr. Samuel's opinion as unreliable.

Defendants also insist that Dr. Samuel neglected to consider alternative potential causes of Plaintiff's psychological injuries. Specifically, Defendants point to Plaintiff's use of depression medication at the time of the examination, and her treatment with a mental health professional that took place over a two to three year period prior to July 27, 2019. Defendants also note that Dr. Samuel did not conduct a physical examination of Plaintiff. However, even accepting Defendants' arguments, the Court is not persuaded that Dr. Samuel's failure to probe into these alternative potential causes and address them in his report renders his opinion unreliable. And if Defendants believe Dr. Samuel's testimony relies on insufficient methodology, they can challenge his opinions through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . ." *Daubert*, 509 U.S. at 596. Accordingly, the Court finds Dr. Samuel's opinion to be reliable. *See*

*Mitchell*, 365 F.3d at 244.

   **c. Fit**
      1. <u>Dr. John G. Peters</u>

The final prong requires that the expert testimony 'fit' by assisting the trier of fact. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). "The basic approach to opinions, lay and expert, is to admit them when helpful to the trier of fact." Fed. R. Evid. 704, advisory committee's notes.

Defendants argue that Dr. Peters's opinions invade the province of the jury by directly answering the questions reserved for the fact finder in this case.  In support of this argument, Defendants cite Dr. Peters's use of case law at different points in his report, his legal conclusions regarding the actions of police officers on scene on July 27, 2019, and his statements regarding prior incidents involving the City of Easton and its Police Department.  In response, Plaintiff claims that Dr. Peters's report consists merely of opinions regarding Defendants' conduct and whether it conformed with applicable law enforcement policies and practices on July 27, 2019.

The Court shares Defendants' concerns about the phrasing of some of Dr. Peters's opinions. Although testimony is not objectionable merely because it embraces an ultimate issue in the case, Fed. R. Evid. 704, experts cannot offer legal conclusions as to whether a party's conduct comports with the law.  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("[T]he District Court must ensure that an expert does not testify as to the governing law of the case.").  Several of Dr. Peters's opinions use similar terms of art and legal phrases that the jury may be required to apply in this case.  *See* Peters Report at 15 ("Officer Kinnel not only shot Ms. Colon with a TASER ECW probe but also had physically grabbed her and suddenly and without cause, forcefully threw her onto the exterior cement porch."); *id.* at 19 (using analysis of the *Graham v. Connor* factors to opine whether Officer Kinnel's force was excessive); *id.* at 24-25 (citing case law and concluding that officers, especially Sergeant Celia failed to attempt to intervene).

But the Court concludes that Dr. Peters' testimony will be admissible so long as he refrains from framing his opinions as legal conclusions and instead testifies as to whether Defendants' conduct on July 27, 2019 comported with law enforcement policies and practices.  It is well-settled that experts may testify to an industry's customs and practices.  *United States v. Fumo*, 655 F.3d 288, 303 (3d Cir. 2011), *as amended* (Sept. 15, 2011).  And an expert may compare a party's conduct to those customs and practices.  *Id.*; *see also Ke v. Liberty Mut. Ins. Co.,* 2021 WL 5203150, at *3 (E.D. Pa. Nov. 9, 2021) (explaining that "experts typically testify about industry customs and practices" by "compar[ing] and contrast[ing] industry practices to the facts before them").  Of course, the line between custom and legal duty can be blurry in highly regulated industries, or in this case law enforcement, because customs in such industries are often intertwined with the legal frameworks that constrain them. *Berckeley*, 455 F.3d at 218.  But this blurriness does not preclude experts from testifying to custom and practice.  *Id.*; *see also Micron Tech., Inc. v. Rambus Inc.*, 2007 WL 9771152, at *2 (D. Del. Aug. 29, 2007) ("The fact that a particular custom or practice is shaped by, or overlaps with, what the law requires does not impact an expert's ability to testify.").  Instead, it simply requires the parties and the Court take extra precaution to ensure the jury understands the purpose of the expert's testimony.  *Fumo*, 655 F.3d at 298.

Accordingly, the Court will not preclude Dr. Peters from testifying, but Dr. Peters must make clear that he is measuring Defendants' conduct against law enforcement policies and practices. Furthermore, Dr. Peters will be precluded from testifying directly whether the actions of Defendants were unreasonable or that the use of force was excessive, for that is precisely the role of the jurors to decide.  *Burger v. Mays*, 176 F.R.D. 153, 157 (E.D. Pa. 1997) ("Any testimony that the Defendant's use of force was unreasonable under the circumstances or that the Defendant unreasonably seized the Plaintiff would be instructing the jury what result to reach and would be expressing a legal conclusion."). Defendants may also request a limiting instruction at trial to further ensure the jury

understands the purpose of Dr. Peters's testimony.  Finally, any testimony regarding prior incidents involving the Easton Police Department and or the City of Easton will be precluded as all *Monell* claims have been withdrawn.

In sum, the Court finds that Dr. Peters's professional experience qualifies him as an expert in the policies and practices of law enforcement.  But the Court finds that portions of his offered expert opinions, discussed in the preceding paragraphs, do not fit this case, as well as Dr. Peters's Report to the extent it contains inadmissible evidence.  As such, the Court grants Defendants' *Daubert* motion in part.

## 2.  John J. Ryan

Plaintiff contends that Ryan's testimony will not be helpful to the jury.  First, Plaintiff argues Ryan's opinion regarding the contents of the videos depicting the events of July 27, 2019 should be excluded.  Plaintiff claims that the video speaks for itself, and a jury will not require an expert to explain the contents of the video.  Under the FEDERAL RULES OF EVIDENCE, expert testimony will be excluded where it pertains to a matter reasonably considered as within the common knowledge and experience of a jury.  *See United States v. Gibbs*, 190 F.3d 188, 212-13 (3d Cir. 1999); *United States v. Dicker*, 853 F.2d 1103, 1108-09 (3d Cir. 1988).  Applying this rule to an expert's testimony regarding events depicted in a video, an expert's narration or explanation of the events depicted in the video will not be helpful to the jury unless they involve a matter outside the knowledge and experience of a jury.  *See id.*  Plaintiff argues that Mr. Ryan should not be permitted to testify simply to his belief of what takes place in the video.  The Court agrees to the extent of simple narration of the events depicted.  However, Mr. Ryan will be permitted to explain the events depicted in the video in the context of police policies and practices, and whether, based on the videos, the conduct of the Defendants comported with said policies and practices.

Plaintiff also argues that Ryan's conclusions that Defendants' conduct comported with the law

should be excluded.  For example, Plaintiff points to several opinions of Mr. Ryan that use similar terms of art and legal phrases that the jury may be required to apply in this case.  *See* Ryan Report at ¶ 71 ("[O]fficers are trained that they may make entry upon exigent circumstances where the officers has an objective basis for fearing that violence is imminent."); *id.* at ¶¶76-77 (using analysis of the *Graham v. Connor* factors to opine whether Officer Kinnel's force was excessive).  Therefore, applying the same reasoning discussed above with respect to Dr. Peters's testimony, the Court will not preclude Mr. Ryan from testifying, but Mr. Ryan must make clear that he is measuring Defendants' conduct against law enforcement policies and practices.

Plaintiff also argues that any testimony regarding the state of mind of Plaintiff or any other witnesses on July 27, 2019 should be excluded.  Plaintiff points to Mr. Ryan's opinions that Plaintiff "participated in impeding Kinnel and the other officers," and that she was "aiding in the obstruction of officers from arresting her son."  Ryan Report at ¶¶ 68, 77.  Plaintiff argues that Ryan should not be permitted to infer or state the intent of the Plaintiff or any other party to this action.  The Court agrees.  Experts may not testify to a party's state of mind. *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.") (internal quotation marks omitted).  Accordingly, Mr. Ryan may not opine as to the intent of any of the parties to this action during the events of July 27, 2019.

In sum, the Court finds that Mr. Ryan's professional experience qualifies him as an expert in the policies and practices of law enforcement.  But the Court finds that portions of his offered expert opinions, discussed in the preceding paragraphs, do not fit this case, as well as the Mr. Ryan's Report to the extent it contains inadmissible evidence.  As such, the Court grants Plaintiff's *Daubert* motion in part.

### 3. Dr. Steven Samuels

Defendants argue that Dr. Samuel's opinion is unreliable and is therefore not helpful to the jury. The Court disagrees. As discussed in the preceding paragraphs, Dr. Samuel relied on sufficient methodology to reach his conclusions as to Plaintiff's diagnosis of PTSD. In his report, Dr. Samuel provides a summary of his interview with Plaintiff and notes her symptoms presented. As such, the Court concludes that Dr. Samuels's opinion is based on "valid reasoning and reliable methodology" and his opinion, testimony, and report will assist the jury in assessing the causation of Plaintiff's psychological injuries. *See Oddi* 234 F.3d at 146. If Defendants believe Dr. Samuels relied on insufficient methodology to reach his conclusions regarding Plaintiff's diagnosis of PTSD and causation of the PTSD, they should pursue these issues through cross-examination and by presenting contrary evidence. *Daubert*, 509 U.S. at 596. Accordingly, Defendants' *Daubert* motion is denied.

## V.     CONCLUSION

The Court finds Dr. Peters and Mr. Ryan qualified and their testimony reliable. However, as the Court finds that some of their offered testimony lacks in fit, the Court grants the parties' *Daubert* motions in part with respect to Dr. Peters and Mr. Ryan. The Court cautions the parties that Dr. Peters and Mr. Ryan are experts in law enforcement policies and practices. They should make clear that they are comparing Defendants' conduct to law enforcement policies and practices rather than to legal requirements. And they should discuss legal requirements only insofar as they shape law enforcement policies and practices. Their reports will be precluded to the extent they contain inadmissible evidence.

Because the Court finds Dr. Samuels to be qualified as an expert and finds his testimony both to be reliable and to fit the case, the Court denies Defendants' *Daubert* motion to exclude Dr. Samuels's testimony and report.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge